## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

JOHN LATHAN             *     CIVIL ACTION NO.  12-2855

VERSUS                *     JUDGE DONALD E. WALTER

WARDEN, CLAIBORNE PARISH     *     MAG. JUDGE KAREN L. HAYES
DETENTION CENTER

### REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus under 28 U.S.C. § 2254 filed on

November 6, 2012, and amended on February 12, 2013, by pro se Petitioner, John Lathan – an

inmate currently in the custody of Louisiana's Department of Public Safety and Corrections at the

Claiborne Parish Detention Center, Homer, Louisiana, following his 2010 conviction and

imposition of a 20 year sentence for Driving While Intoxicated, Fourth Offense.  Pursuant to the

District Court's standing order, the matter was referred to the undersigned magistrate judge for

review, report, and recommendation in accordance with 28 U.S.C. § 636.  For reasons assigned

below, it is recommended that the petition for writ of habeas corpus be DENIED and the matter

DISMISSED WITH PREJUDICE.

### Background

The Louisiana Second Circuit Court of Appeal summarized the evidence adduced at

Petitioner's trial, as follows,

> On November 4, 2008, at approximately 7:00 a.m., William Paul Rucker was
> driving to work in Bienville Parish when he observed a "tan" truck being driven in
> the wrong direction.  Rucker began following the truck, which was swerving
> from one side of the road to the other side. Rucker noticed that the truck had
> caused two or three cars to leave the road and had almost hit a group of children
> who were waiting for the school bus. Rucker called 911 and provided a

description of the truck and its license plate number; he also told the 911 operator that the driver was wearing a red shirt. Rucker followed the truck until it pulled into a private driveway and struck the front porch of the house located there.

Deputy Sheronda Bell of the Bienville Parish Sheriff's Department responded to the call. When Deputy Bell arrived on the scene, she observed a tan truck bearing the license plate number that had been provided by the 911 caller. The truck was parked at a private residence with its motor still running. Deputy Bell also observed the defendant, John D. Lathan, slumped in the driver's seat of the truck with "his feet . . . still on the floor on the driver's side [and] his upper part of his body was leaned over toward the passenger side." Deputy Bell opened the driver's side door and tried to wake the defendant. After several attempts, the deputy managed to awaken  the defendant and he  exited the truck. Deputy Bell testified that the defendant was wearing a red shirt and "smelled of alcohol." When questioned by Deputy Bell, the defendant denied driving the truck that morning; he stated that he had spent the night in the truck. A man and a woman exited the residence where the truck was parked, and the woman corroborated the defendant's statement that he had spent the night in the truck.

Louisiana State Trooper Seth Harmon later arrived on the scene to assist Deputy Bell. The defendant's interaction with the officers and his subsequent arrest were captured by the video camera installed in Trooper Harmon's unit. The videotape was played in open court. During the trial, the defense stipulated that the defendant failed the field sobriety tests administered by Trooper Harmon. The defense also stipulated that the defendant blew a "proper sample" into the Intoxilyzer 5000 machine and the sample registered a .189 reading.

Because the defendant had three prior convictions for DWI, he was arrested and charged with DWI, fourth offense. During the trial, the defendant stipulated that he was the same person who was convicted of the three prior DWI charges.

Rucker,  the 911 operator, Deputy Bell, Trooper Harmon and the defendant testified during the trial. The defendant testified that on the evening of November 3, 2008, he was sleeping on his mother's couch. He stated that he woke up at approximately 6:00 a.m. and discovered that his truck was gone. The defendant also stated that after he went outside and sat on his mother's front porch, his nephew drove up in his truck. He testified that he and his nephew argued and his nephew left. The defendant stated that he got into the truck, drank some gin and fell asleep. The defendant admitted that earlier that morning, he had drunk beer with his friends in Taylor, Louisiana. However, he testified that he drove to his mother's home at 2:00 a.m., not 6:00 a.m. or 7:00 a.m. On cross-examination, the defendant also admitted to driving drunk, with a suspended driver's license, at 2:00 a.m.

2

*State v. Lathan*, 70 So.3d 851, 852-53 (La. App. 2 Cir. 2011).

At the conclusion of a May 19, 2010, bench trial, Lathan was convicted of Driving While Intoxicated, Fourth Offense.  (R. 7).[1]  In its oral reasons for judgment, the trial court made it clear that its decision rested heavily on the testimony provided by the citizen informant, William Paul Rucker:

> [t]he Court finds that Mr. Rucker was a very credible witness, that he saw the defendant driving, that he almost hit him – close to fifteen feet away – that he did identify him because of the closeness of the accident, that almost happened that Mr. Lathan ran two other cars off the road, almost hit children on the side of the road. And, I guess, Mr. Rucker, what I would assume that if he almost got hit by a car and he sees somebody's face, I would tend to probably remember that face myself – not necessarily what he was wearing . . . Not only was he adamant about his identification when he first testified, he was just as adamant or more when the nephew was brought in to – while they were standing side by side . . . The trooper indicated that he [Petitioner] did make a .189 on the BAC. He failed the field sobriety test. And he said there was no doubt in his mind that he was intoxicated . . . By his [Petitioner's] own testimony, he admitted that at 2:00 o'clock in the morning when he came back from Taylor that he was drunk at that particular time . . . . So, the Court has no choice but to find him guilty of Driving While Intoxicated – Fourth Offense.

(R. 330-32).

On July 13, 2010, the trial court sentenced Lathan to a twenty year term at hard labor, with *at least* three years to be without benefit of parole, probation or suspension of sentence.  (R. 339).  Lathan appealed to the Louisiana second circuit wherein he argued, via his single assignment of error, that his sentence was constitutionally excessive.  *See Lathan*, 70 So.3d at 855-56.  Although the court of appeal rejected the assignment of error and affirmed Lathan's conviction, it nonetheless remanded the matter for re-sentencing because "[t]he imposed sentence fail[ed] to specify the maximum numbers of years the defendant must serve before he is eligible

---

[1]  Reference to the state court record is abbreviated to "R.", together with the appropriate bates-numbered page(s).  The state court record is filed in the instant record as document # 18-1.

for parole."  *Id.* at 856.  Lathan did not appeal the second circuit's decision to the Louisiana

Supreme Court.

On remand, the trial court sentenced Lathan to "twenty years at hard labor, three of which

*shall be* without the benefit of parole, probation or suspension of sentence and also to pay a fine

of Five Thousand Dollars."  (R. 343) (emphasis added).

On October 11, 2011, Lathan filed an application for Post Conviction Relief ("PCR") that

included five claims.  (R. 104-10).  On November 7, 2011, the trial court tersely and summarily

denied the PCR, stating that "the Court agrees with the State's argument on claims one through

five and finds all Defendant's claims are without merit and therefore are denied."  (R. 205).  On

February 3, 2012, the Louisiana Court of Appeal for the Second Circuit perfunctorily denied

Lathan's writ application.  (R. 2212-213).  His writ application to the Louisiana Supreme Court

fared no better; it was denied without fanfare on September 14, 2012.  (R. 215).

Having exhausted his state court avenues for relief, Lathan filed the instant petition for

writ of habeas corpus on November 6, 2012, and asserted the same five claims that he presented

in his PCR application, to wit:

    (1)    unreasonable search and seizure in violation of the Fourth Amendment to the U.S. Constitution;

    (2)    insufficient evidence;

    (3)    the "state police wrongfully showed Mr. Rucker a picture of Mr. Lathan in efforts to help Mr. Rucker to make a positive identification of the driver";

    (4)    ineffective assistance of counsel; and

    (5)    insufficiency of prior pleas.

*See* doc. # 1, pgs. 4-7.

On April 30, 2013, the undersigned ordered the Clerk of Court to serve the petition on the

Attorney General for the State of Louisiana and Warden Johnny Sumlin (collectively,

"Respondent").  (April 30, 2013, Mem. Order [doc. # 10]).  On July 15, 2013, Respondent filed

his opposition to the petition [doc. # 16], together with a copy of the state court record.

Petitioner filed a reply memorandum on July 26, 2013.  *Id.*  The matter is now before the court.

### Law and Analysis

**I.      Standard of Review – 28 U.S.C. § 2254**

The federal courts' statutory wherewithal to issue habeas corpus relief for persons in state

custody derives from 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA").  *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 783

(2011).  The statute specifies that

> [a]n application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim —
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable
>           application of, clearly established Federal law, as determined by the
>           Supreme Court of the United States; or
> (2)      resulted in a decision that was based on an unreasonable
>           determination of the facts in light of the evidence presented in the
>           State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court has made clear that § 2254(d)(1)'s "contrary to" and "unreasonable

application" clauses have independent meaning:

> [a] federal habeas court may issue the writ under the *contrary to* clause if the state
> court applies a rule different from the governing law set forth in [Supreme Court]
> cases, or if it decides a case differently than [the Supreme Court] on a set of
> materially indistinguishable facts.  The court may grant relief under the
> *unreasonable application* clause if the state court correctly identifies the
> governing legal principle from [Supreme Court] decisions but unreasonably
> applies it it to the facts of the particular case.  The focus of the latter inquiry is on
> whether the state court's application of clearly established federal law is

> *objectively unreasonable*, and . . . an unreasonable application is different from an
> incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850 (2002) (citations and internal quotation marks omitted) (emphasis added).

Furthermore, under § 2254(d)(2),

> [i]t is not enough to show that a state court's decision was incorrect or erroneous.
> [Rather, a] petitioner must show that the decision was *objectively unreasonable*, a
> substantially higher threshold[,] requiring the petitioner [to] show that a
> reasonable factfinder *must* conclude that the state court's determination of the
> facts was unreasonable.

*Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (citations and internal quotation marks omitted) (emphasis added).

A federal court must presume a state habeas court's factual findings are correct absent clear and

convincing evidence to the contrary.  *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir.) *cert. denied,* ___

_ U.S. ___, 133 S. Ct. 2746 (2013) (citation omitted).  Merely because the federal court "would

have reached a different conclusion in the first instance," does not suffice.  *Id*.  Thus, to prevail

under § 2254(d)(2), the petitioner must demonstrate not only an error with a state court's factual

finding under § 2254(e)(1), but also that the state court's determination of facts was unreasonable

in light of the evidence presented in the state court proceeding.  *Batchelor, supra*.

For purposes of § 2254(d), a state court is not required to provide reasons before its

decision may be deemed to have been "adjudicated on the merits."  *Johnson v. Williams*, ___

U.S. ___, 133 S. Ct. 1088, 1094 (2013) (citation omitted).  Rather, "[w]hen a federal claim has

been presented to a state court and the state court has denied relief, it may be presumed that the

state court adjudicated the claim on the merits in the absence of any indication or state-law

procedural principles to the contrary."  *Id.*  (citation omitted).[2]

_____

[2]  "The presumption may be overcome when there is reason to think some other
explanation for the state court's decision is more likely."  *Richter*, 131 S. Ct. at 785.

6

When the state court has summarily denied a petitioner's federal claims, the petitioner

may satisfy the "unreasonable application" prong of § 2254(d)(1) by showing that "there was no

reasonable basis" for the state court's decision.  *Cullen v. Pinholster*, ___ U.S.___, 131 S. Ct.

1388, 1402-03 (2011) (citation omitted).  Under these circumstances, the "habeas court must

determine what arguments or theories . . . *could have supporte[d]* the state court's decision; and

then it must ask whether it is possible fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." *Id.*

(citation omitted) (emphasis added).

## II.     Petitioner's Claims

###     a)     Claim One:  Unreasonable Search and Seizure

Petitioner argues that the "Police had no probable cause to enter on private property or to

open Mr. Lathan's car door in the driveway of his mother's home without a warrant in violation

of the Fourth Amendment to the United States Constitution."  [doc. # 1, pg. 4].   The record

reveals, however, that Petitioner never filed a motion to suppress prior to or during trial.

The Supreme Court held in *Stone v. Powell*, that "where the State has provided an

opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be

granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional

search or seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037,

3052 (1976).  The Fifth Circuit applies this bar to habeas review so long as the state afforded the

defendant an opportunity to litigate the issue, whether or not the defendant availed himself of the

opportunity.  *See ShisInday v. Quarterman*, 511 F.3d 514, 525 (5th Cir. 2007) (citing *Guanaco v.*

*Cockerel*, 301 F.3d 316, 320-21 (5th Cir.2002).  In other words, "in the absence of allegations

that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits, *Stone* forecloses review." *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006) (citation and internal quotation marks omitted).

Here, Lathan was afforded time after his arraignment, but before trial, to file a motion to suppress. *See* La. C.Cr.P. 521.  State law also authorized Lathan to file a motion to suppress anytime prior to, or during trial.  La. C.Cr.P. Art. 703.  Because the state court provided an opportunity for full and fair litigation of Petitioner's Fourth Amendment claim, and Lathan presented no argument or evidence that Louisiana courts routinely or systematically prevent adjudication of Fourth Amendment claims, Petitioner's assignment of error is barred by *Stone*.

b)     Claim Two:  Sufficiency of the Evidence

In his second assignment of error, Lathan argues that the prosecution failed to provide sufficient evidence to prove his guilt beyond a reasonable doubt.  [doc. # 1, pg. 4].  Specifically, Lathan contends that the evidence was insufficient to support his conviction for a DWI Fourth Offense based solely on the misleading and incorrect testimony provided by the state's principal witness, Paul Rucker.  (Pet. Response [doc. # 19]).

A challenge to the sufficiency of the evidence is analyzed under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979).  Under *Jackson*,

it is the responsibility of the [trier of fact]—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the [ ] verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the [verdict]. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was

"objectively unreasonable."
*Cavazos v. Smith*, __ U.S. __, 132 S. Ct. 2, 3-4 (2011).

Thus, evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Coleman v. Johnson*, _____ U.S.__ , 132 S. Ct. 2060, 2064 (2012) (citation omitted).  Furthermore, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

Under *Jackson*, "federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman, supra* (internal quotation marks and citation omitted).  Under Louisiana law (for purposes of this case), the elements of a DWI - fourth offense include 1) operating a motor vehicle, 2) while under the influence of alcoholic beverages, and 3) despite having three prior, valid DWI convictions.  *See* La. R.S. 98(A)(1)(a) & (E); *State v. West*, 617 So. 2d 1384, 1386 (La. App. 2nd Cir. 1993) (discussing DWI-2d); *State v. Wiltcher*, 956 So. 2d 769, 772 (La. App. 2d Cir. 2007) (discussing DWI-4th).[3]

Petitioner cannot in good faith contest the sufficiency of the evidence relative to elements one and three of his convicted offense.[4]  First, he admitted at trial that he had consumed a significant amount of alcoholic beverages at around 2:00 a.m. and again at 6:15 a.m. of the

---

[3]  As recited earlier, the state court denied Petitioner's claims on collateral review by stating that it agreed with the State's arguments.  (R. 205).  The State invoked and applied the *Jackson* standard in its argument; thus, the trial court implicitly did so as well.  *See* R. 140.

[4]  He *does*, however, contest the constitutional sufficiency of unrepresented guilty pleas. *See* discussion, *infra*.

morning at issue.   (R. 313-315, 321).  He also stipulated, via counsel, that he performed poorly

on field sobriety tests, and that shortly after arrest, he registered .189 on an Intoxilizer 5000

machine.  (R. 278-282).  Second, Lathan, via counsel, stipulated at trial to the validity of his three

prior convictions.  (R. 226-227).

As a result, Lathan's challenge necessarily focuses upon the sufficiency of the evidence

that he was the person operating his truck during the relevant period.  At the outset, the court

wishes to dispel Lathan's suggestion that a law enforcement officer may never derive reasonable

suspicion to initiate a *Terry* stop unless she personally observed him violating the law.  *See*

*Adams v. Williams*, 407 U.S. 143, 146-49, 92 S. Ct. 1921, 1923 (1972).  Rather,

> [t]he question of whether a 911 call has a sufficient indicia of reliability to provide
> reasonable suspicion to justify a stop is evaluated based on the circumstances of
> each case. A good starting point is the presumption of the reliability of an
> eyewitness 911 call reporting an emergency situation for purposes of establishing
> reasonable suspicion, particularly when the caller identifies who he or she is.

*United States v. Vickers*, 540 F.3d 356, 361 (5th Cir. 2008) (citations and internal quotation
marks omitted).

In this case, Petitioner stresses certain inaccuracies with Mr. Rucker's testimony that he

contends rendered Rucker unreliable.  He points out that Rucker provided the wrong address to

the police, inaccurately described the shirt that he was wearing, and told the police that his truck

almost struck some school children standing beside the road when, in fact, the public schools

were closed for election day.

Like the state court, however, this court is not moved by these alleged inconsistencies.

Lathan glosses over the important detail that Rucker provided the police with a description of his

truck and its license plate number.  Some 40-50 minutes later, the police located Lathan's

matching truck, with him in it *apparently* passed out in the front seat and the engine on.

With regard to the schoolchildren, the court notes that Rucker might have assumed that, because they were standing at the side of the road, the school-*aged* children must have been going to school, when, as it turns out, school was closed that day.  Alternatively, the children might have been waiting transportation to a private school that was not closed for the national election day.

Finally, whether the pattern on Lathan's shirt was checked, striped, or solid is not dispositive.  Rucker maintained at trial that he saw a red shirt.  Defense counsel argued this inconsistency to the trial court, but the court determined that it did not impact the outcome.  (R. 326-331).

In lieu of Rucker's version of events, Petitioner proffered a fanciful tale that his nephew, Derrick Lathan, had taken his truck.  When his nephew returned, Petitioner purportedly jumped into his truck, turned on his engine because it was cold, and then consumed alcohol until he went to "sleep."  (R. 314-315).  Thus, under Petitioner's hypothesis, either Rucker concocted the whole story, or it was Petitioner's nephew that Rucker observed driving dangerously and erratically in Petitioner's truck.

As the trial judge noted, however, Petitioner's story was not corroborated by his nephew, or anyone else for that matter, e.g., his mother.  In addition, Rucker accurately described Lathan as wearing a red shirt, and, at trial, expressly discounted the possibility that Lathan's nephew was the person that he saw driving the truck.  (R. 242-243, 324-325).

In sum, upon construing the evidence in the light most favorable to the prosecution, the court finds that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, and thus, the decision of the state court was not objectively

unreasonable.

   c)    Claim Three:  Suggestive Identification

In his third claim, Petitioner argues that "the state police wrongfully showed Mr. Rucker a picture of Mr. Lathan in [an effort] to help Mr. Rucker to make a positive identification of the driver."  [doc. # 1, pg. 5].  Petitioner alleges that the trooper photographed him subsequent to arrest, and thereafter, showed that photograph "in a suggestive manner" to Mr. Rucker at his place of employment.  *Id.*  According to Lathan, this caused Mr. Rucker to retract "his first statements regarding the driver's attire" and allowed him to confirm that Lathan was the driver of the truck that he had observed.  *Id.*

At trial, Rucker positively identified Petitioner in open court.  (R. 233-34).  Furthermore, when confronted with an impromptu, in-court lineup consisting of Petitioner and Petitioner's nephew, Derrick Lathan, Rucker was adamant that the person he saw driving the truck was the former and not the latter.  (R. 323-325).  At trial, neither Rucker nor Trooper Harmon could recall whether Harmon had shown Rucker a photo of Lathan.  (R. 243-244, 301-302).  Ultimately, however, Harmon agreed that he thought he showed a photo of Lathan to Rucker.  *Id.*

   The law is clear that

   [t]he Due Process Clause protects against the use of evidence obtained from
   impermissibly suggestive identification procedures. The admissibility of
   identification evidence is governed by a two-step test:  First, we determine
   whether the identification procedure was impermissively suggestive, and second,
   we ask whether the procedure posed a very substantial likelihood of irreparable
   misidentification.  If we answer both questions in the affirmative, the
   identification is inadmissible.  This is known as the *Brathwaite* test, after *Manson
   v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

*United States v. Moody*, 564 F.3d 754, 762 (5th Cir. 2009) (internal citations and quotation marks omitted).

The foregoing analysis is a mixed question of law and fact.  *Coleman v. Quarterman*, 456 F.3d 537, 544 (5th Cir. 2006).

Thus, even if an out-of-court identification procedure were impermissibly suggestive, the resulting identification testimony still may be admissible if it is reliable in light of the totality of the circumstances, i.e., if it meets *Brathwaite*'s second prong.  *Amador v. Quarterman,* 458 F.3d 397, 414 (5th Cir.2006).  In assessing the reliability of an identification procedure, the court must consider several factors:

> (1) the opportunity of the witness to view the criminal at the crime scene; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

*United States v. Delgado*, 364 F. App'x 876, 880 (5th Cir. 2010) (citations omitted).

Applying the foregoing to the matter at hand, it is manifest that, insofar as Trooper Harmon *did* exhibit a single photograph to Mr. Rucker for identification purposes, this practice was impermissibly suggestive.  *United States v. Sanchez*, 988 F.2d 1384, 1389 (5th Cir. 1993) (citing *Brathwaite*, 432 U.S. at 108–09, 97 S.Ct. at 2249–50).  Nonetheless, Petitioner has failed to demonstrate that there was no reasonable basis for the state court's implicit determination that the identification procedure violated *Brathwaite*'s second prong.

Rucker testified that he saw Lathan from a close distance, not once, but on two occasions.  Initially, Rucker observed Lathan driving his truck on the wrong side of the road from a distance of approximately 15 feet.   (R. 232).  In fact, Lathan's vehicle was coming at Rucker and almost struck him. (R. 233).  Rucker stated that he again had a good view of Lathan when Lathan pulled into the driveway and came to a stop.  (R. 245).

Rucker must have been closely observing Lathan on both occasions.  During the initial

encounter, Rucker would have been focused on Lathan because Lathan's truck almost struck

him.  At the time of the second viewing, Rucker again would have been concentrating on Lathan

because he had been following Lathan to assist law enforcement.

Although Rucker may have recalled incorrectly the pattern on Lathan's shirt, he

accurately recalled that it was a red shirt.  (R. 233, 247).  Furthermore, law enforcement officers

found a tan or brown pickup that matched the license plate number provided by Rucker, with an

intoxicated and unconscious Lathan slumped over the front seat – albeit at a different address

than that provided by Rucker.

There is no record evidence describing the degree of certainty exhibited by Rucker at the

time that he identified Lathan to Trooper Harmon.[5]  At trial, however, Rucker stated that he had a

good memory for faces.  (R. 247).  In addition, when presented with Derrick Lathan, and asked

whether he could have been the person behind the wheel of the truck, Rucker remained steadfast.

Finally, little time elapsed between the time of the crime and the alleged confrontation; Trooper

Harmon testified that he was "pretty sure" that he went to talk to Mr. Rucker right after he

transported Lathan to the Sheriff's Office on the morning of the arrest.  *See* R. 300.

Other cases that have filled the *Brathwaite* blanks with facts akin to those present here

have concluded that there was no substantial likelihood of misidentification.  *See e.g.*, *United

States v. Moody*, 564 F.3d 754, 763 (5th Cir. 2009); *United States v. Stoddard*, 234 F. App'x 241,

243 (5th Cir. 2007) (unpubl.).  Thus, because at least some fairminded jurists could have decided

this issue in conformity with the state habeas court, Petitioner has failed to demonstrate that the

---

[5] Of course, neither Harmon nor Rucker were sure that Harmon ever presented Rucker
with a photograph.

state court decision was objectively unreasonable.

    d)    <u>Claim Four: Ineffective Assistance of Counsel</u>

Petitioner contends that his trial counsel was ineffective because he failed to (1) "investigate Defendant's claim that his nephew was driving the truck" and failed to call Petitioner's nephew at trial, (2) argue that Petitioner could not have almost hit a bunch of school children because "the date of the alleged incident was an official holiday – school was out," and (3) request the "dash camera video of [Deputy Bell]."  [doc. # 1, pg. 6].

For purposes of an ineffective assistance of counsel claim prosecuted under 28 U.S.C. § 2254, the "clearly established federal law" against which the federal court measures the state court's denial of relief is the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984).  *Clark v. Thaler*, 673 F.3d 410, 430 (5th Cir.) *cert. denied,* ___ U.S. ___, 133 S. Ct. 179 (2012).  To prevail under *Strickland,* Petitioner must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced his defense.  *Id.*

To meet *Strickland*'s first prong, i.e., deficient performance:

> [the] person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness.  A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel' guaranteed the defendant by the Sixth Amendment.

*Harrington, supra* (citations and internal quotation marks omitted).

To establish resulting prejudice, the petitioner must show

> a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  It is not enough to show that the errors had some conceivable effect on the outcome of the

> proceeding.  Counsel's errors must be so serious  as to deprive the defendant of a
> fair trial, a trial whose result is reliable.

*Id*.

In addition, unreliability and unfairness do not result "if the ineffectiveness of counsel does not

deprive the defendant of any substantive or procedural right to which the law entitled him."

*Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 844 (1993).

The *Strickland* standard is a general one, therefore, the range of reasonable applications

is substantial.  *Harrington, supra* (citation omitted).  Furthermore, unreasonableness under

*Strickland* is not equivalent to unreasonableness under § 2254(d).  *Id*.  Rather, under §2254(d),

the question is whether there is *any reasonable argument* that counsel satisfied *Strickland*'s

deferential standard.  *Id*.  (emphasis added).

Applying the foregoing principles to Petitioner's claim(s), the undersigned finds that

Lathan has not met the requisite standard for relief.  First, the court readily envisions that the

reason why Lathan's counsel did not call Lathan's nephew as a witness at trial was because the

nephew's testimony would not have been favorable to the defense.  To support Lathan's version

of events, his nephew, in effect, would have had to testify that *he* had been the person driving

Lathan's truck in a reckless and dangerous manner.  During cross-examination, however, Lathan

testified that his nephew had not come forward because he had been in trouble with the law too,

and Lathan did not want his nephew to get "tied up" with this charge.  (R. 319).  Obviously, "[a]n

attorney need not pursue an investigation that would be fruitless, much less one that might be

harmful to the defense."  *Harrington*, 131 S. Ct. at 789-90 (citation omitted).

Furthermore, it is well established that claims of "failure-to-investigate" are not favored

in federal habeas corpus review because the presentation of testimonial evidence is a matter of

16

trial strategy and because allegations of the content of a prospective witness' testimony are largely speculative. *Evans v. Cockerel*, 285 F.3d 370, 377 (5th Cir. 2002) (citation omitted). "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, a *habeas* court cannot even begin to apply *Strickland*'s standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance." *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).  In addition, "to demonstrate the requisite *Strickland* prejudice, [the petitioner] must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans, supra*. Lathan has not made that showing here.

Lathan's argument that his counsel was ineffective for failing to obtain Deputy Bell's dashboard camera video fares no better than his argument that counsel should have investigated and called his nephew as a witness.  First, and foremost, there is no evidence that there was a video.  Deputy Bell testified that she did not think there was a camera in her patrol car at that time.  (R. 276).  Defense counsel then asked Deputy Bell to check with her supervisor, Lieutenant Jones, to see whether there was a camera in her car.  *Id*.  Lieutenant Jones later made himself available at court, but was not called to the stand.  (R. 308).  A reasonable explanation why counsel did not further pursue the video issue is because he confirmed with Bell and Jones off the record that Bell did not have a camera in her patrol car at the time.  Furthermore, even if this phantom video did exist, Petitioner has not demonstrated its contents or that it reasonably would have undermined confidence in the outcome of the case.

Petitioner also contends that counsel was constitutionally ineffective because he failed to

point out to the trial court that the public schools were closed on November 4, 2008, because it was election day.  Lathan argues that had counsel done so, Rucker would have been completely discredited because he had testified that Lathan had passed school children on the side of the road.  Lathan further contends that counsel's omission prejudiced him at sentencing because the judge considered the presence of school children in his decision to impose a 20 year prison term.

Lathan, however, overlooks that counsel *did* point out to the judge at sentencing that November 4 was election day, and that consequently school would not have been in session.  (R. 339).  The judge explained, however, that his concern was for the safety of the children whether it was a school day or not.  (R. 340).  The judge further stated that his usual sentence for a DWI-4th was 20 years.  (R. 338).

The court recognizes that evidence that the public schools were not in session on November 8, 2008, could have been used at trial to attack Mr. Rucker's credibility.  As discussed earlier in this opinion, however, Rucker may have meant that the children he observed were school-age children.  Alternatively, it is plausible that the children he observed were awaiting transportation to a private school that was not closed that day.

It bears repeating that when law enforcement found Lathan's truck, they found Lathan – an individual with three prior DWI convictions – inebriated and "asleep" in the driver's seat, with the engine still running.  In fact, Lathan admitted at trial that he had driven his truck earlier that morning while under the influence of alcohol.  Given these facts, the court cannot conclude that there is any reasonable probability that the trial court outcome would have been any different had counsel adduced evidence that the public schools were closed because of election day.

In sum, the undersigned finds that the state court's decision denying Petitioner's

18

*Strickland* claim was not objectively unreasonable.

e)     Claim Five:  Insufficiency of Prior Pleas

In Petitioner's final claim, he argues that he "was not represented by counsel for two predicate DWI convictions"[6]  and this alone "barred the Defendant the substantial and fundamental right to having his rights explained in a way that he would best understand the consequences and repercussion of the [prior] pleas."  [doc. # 1, pg. 7].

The Supreme Court has held (at least for purposes of a federal sentencing) that a defendant does not enjoy the constitutional right to collaterally attack the validity of previous state convictions used to enhance his sentence, save only for prior convictions obtained in derogation of the defendant's Sixth Amendment right to counsel.  *Custis v. United States*, 511 U.S. 485, 114 S. Ct. 1732 (1994).  Courts also apply *Custis* to collateral attacks raised in § 2254 petitions.  *See e.g.*, *Rushing v. State*, Civ. Action No. 06-187, 2008 WL 2357005 (N.D. Miss. May 1, 2008); *Foreman v. Dretke*, Civ. Action No. 04-4454, 2005 WL 1923824 (S.D. Tex. Aug. 10, 2005).

The Sixth Amendment affords an accused the right to counsel at all critical stages of the criminal process.  *Iowa v. Tovar*, 541 U.S. 77, 80-81, 124 S. Ct. 1379, 1383 (2004) (citations omitted).  The entry of a guilty plea, whether to a misdemeanor or a felony charge, constitutes a "critical stage" of the process.  *Id*.  Thus, an uncounseled conviction is unconstitutional if the defendant did not waive his right to any attorney."  *United States v. Lugo-Rodriguez*, 285 F. App'x 148, 149 (5th Cir. 2008) (unpubl.) (citations omitted).  Waiver of the right to counsel must

---

[6] Lathan was represented by counsel when he pleaded guilty to his third DWI.  (R. 180-204).

be a "knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances." *Tavar, supra* (citation omitted).  Furthermore, "in a collateral attack on an uncounseled conviction, it is the defendant's burden to prove that he did not competently and intelligently waive his right to the assistance of counsel."  *Id.*

The constitutional requirements for a valid waiver of counsel are satisfied when "the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea."  *Id.*  The Supreme Court has not established any specific formula or script for the court to read when a defendant conveys his intention to proceed without counsel.  *Id.*  The information that a defendant must possess to make an intelligent decision depends on such factors as his education, the nature of the charge, and the stage of the proceeding.  *Id.*

Applying the foregoing principles to the two un-counseled guilty pleas at issue here, the court notes that the trial courts advised Lathan concerning the nature of the charges against him, explained his right to counsel and the benefits of counsel, discussed the ramifications of a guilty plea, and ensured that it was uncoerced.  (R. 150-155, 158, 167-174, 176).  The judges also ensured that Lathan's age (32 & 34) and education (high school) were sufficient to confirm that he knew what he was doing.  (R. 157-158, 174-176).[7]

In sum, Lathan has not demonstrated that the state court's denial of his constitutional challenge to the validity of his prior un-counseled guilty pleas was contrary to, or involved an unreasonable application of, clearly established federal law or that the state court's determination

---

[7]  Moreover, at the time of his second DWI, Lathan certainly could not claim that he did not understand that his conviction could be used as a basis for a subsequent DWI because his first conviction was used as a predicate offense for his DWI-2nd charge.

of the facts was unreasonable in light of the evidence before it.  *See* 28 U.S.C. § 2254(d)(1) & (2).

**Conclusion and Recommendation**

For the reasons stated above,

IT IS RECOMMENDED that the petition for habeas corpus, as amended [doc. #s 1 & 9], filed by Petitioner John Lathan be DENIED and DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum**

setting forth arguments on whether a certificate of appealability should issue.  *See* 28

U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District**

**Judge at the time of filing.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 3rd day of October

2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

22